# United States District Court
# District of Massachusetts

LAWRENCE MERIGAN,
    Plaintiff,

v.                                          CIVIL ACTION NO. 2009-11087-RBC[1]

LIBERTY LIFE ASSURANCE
    COMPANY OF BOSTON,
        Defendant.

## *MEMORANDUM AND ORDER ON THE MERITS OF COUNT I OF PLAINTIFF'S COMPLAINT*

COLLINGS, U.S.M.J.

### *I. Introduction*

Originally filed in the Suffolk County Superior Court in Massachusetts, this case was removed to the United States District Court for the District of Massachusetts on June 26, 2009. At the time of the removal, the operative

---

[1] On September 22, 2009, with the parties' consent this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636©.

pleading was the first amended complaint. (#7[2]) In that document plaintiff Lawrence Merigan ("Merigan") alleges claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, for benefits allegedly due under a long-term disability plan administered by defendant Liberty Life Assurance Company of Boston ("Liberty")(Count I) and an award for attorneys' fees and costs (Count II).

On July 30, 2009, Liberty filed a motion to dismiss plaintiff's first amended complaint (#8) along with a memorandum in support and attachments (#9) which the plaintiff opposed (##10-14). After a hearing on January 22, 2010, the motion to dismiss was denied on March 11, 2010. (*See* Electronic Order entered 03/11/2010) Thereafter on April 1, 2010, Liberty filed an answer to the first amended complaint as well as a counterclaim alleging a claim for specific performance and/or equitable declaration and enforcement of the policy against Merigan under 20 U.S.C. § 1132(a)(3) premised upon the plaintiff's purported failure to reimburse Liberty for overpayment of LTD

---

[2] Docket #7 is the entire state court record, but will be used herein to designate the first amended complaint.

benefits.[3] (#23) Merigan filed a motion to dismiss the counterclaim (#24) as to which Liberty filed an opposition (#27). The motion to dismiss the counterclaim was denied on June 21, 2010. (*See* Electronic Order entered on 06/21/2010) On July 11, 2010, Merigan filed an answer to the counterclaim. (#29)

At a status conference on July 15, 2010, the parties agreed that most, if not all, of the material facts in the case were undisputed. (Electronic Clerk's Notes entered 07/15/2010) Counsel were directed to file a stipulation of undisputed facts on or before the close of business on September 15, 2010, as well as memoranda of law in support of their respective positions on the question of whether the defendant acted properly in refusing to consider Merigan's application on the ground that it was untimely. (Electronic Clerk's Notes entered 07/15/2010) All of these pleadings were duly filed. (##30, 35, 36, 37)

On October 15, 2010, Liberty filed a motion for summary judgment on the counterclaim with supporting papers. (##31, 32, 33, 34) Merigan filed

---

[3] The civil enforcement provision of ERISA, section 502(a)(3), invests participants, beneficiaries or fiduciaries with the legal right to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Title 29 U.S.C. § 1132(a)(3).

pleadings in opposition to the motion. (##38, 39, 40) With leave having been granted, Liberty filed a reply brief on December 6, 2010. (#42) On September 22, the motion for summary judgment on the counterclaim was allowed with respect to liability. (#44)

On May 16, 2011, the plaintiff submitted a copy of a recent Supreme Court decision, *CIGNA Corp. v. Amara*, - U.S. -, 131 S. Ct. 1866 (2011), that he contends supports his position that Liberty acted wrongly in refusing to consider his appeal. (#43) Liberty was ordered to file a memorandum of law explaining its position on the effect of the new Supreme Court case (Electronic Procedural Order entered 09/20/2011); this brief was filed on October 3, 2011. (#45) Merigan was granted leave to file a memorandum of law in response to Liberty's pleading, and this was submitted on October 17, 2011. (#46)

At this juncture, the issue of whether Liberty acted properly in refusing to consider Merigan's application on the ground that it was untimely is poised for decision on the record of undisputed facts.

## II. The Facts

Unless otherwise indicated, the following facts are undisputed.[4] Merigan was an employee of Universal Health Services, Inc. ("UHS") and, during his employment, Liberty provided long-term disability ("LTD") coverage to eligible UHS employees pursuant to a Group Disability Income Policy, Policy Number GF3-830-488959-01 (the "Policy"). (#30 ¶¶ 1, 2 and Exh. A; #32 ¶ 1; #40 ¶ 1) The Policy is the contract between UHS and Liberty; it is the document that Liberty uses to administer a claim. (#30 ¶ 3)

Liberty provided to UHS a Certificate of Coverage describing certain terms in the Policy as well as a draft Summary Plan Description ("SPD") describing certain terms in the Policy. (#30 ¶ 4 and Exh. B) The Policy and the Certificate of Coverage are different documents. (#30 ¶ 5)

UHS bore the responsibility for delivering SPDs to its employees, including Merigan. (#30 ¶ 6) UHS did not request that Liberty draft an SPD, nor did Liberty prepare an SPD for UHS. (#30 ¶¶ 7, 8) Since 1991, UHS has prepared and distributed SPDs to its employees describing employee benefits including, but not limited to, LTD benefits. (#30 ¶ 9) Although UHS has no written policy

---

[4] These facts are gleaned primarily from the parties' Stipulation of Undisputed Facts (#30), in some instances verbatim.

5

memorializing the practice, the SPDs are sent to new employees via U.S. Mail to the addresses listed in UHS' payroll system. (#30 ¶¶ 10, 11) Employees are also able to request copies from the Human Resources department or benefits office of UHS. (#30 ¶ 10) All written requests for copies of SPDs are kept in the requesting employee's personnel file. (#30 ¶ 10)

When benefit design changes or regulatory changes occur, SPDs are updated and reissued. (#30 ¶ 12) Moreover, SPDs are also reissued every six years. (#30 ¶ 12) Reissued SPDs are sent to employees via U.S. Mail to the addresses listed in UHS' payroll system. (#30 ¶ 12) UHS does not itself send the SPDs, but rather outsources the task of printing and mailing SPDs to a vendor. (#30 ¶ 13) The SPDs contain an acknowledgment form for employees to sign and return. (#30 ¶ 14) In practice, few employees return the acknowledgment forms, and UHS does not follow up with employees to obtain the signed forms because it would be too onerous of an undertaking. (#30 ¶ 15)

An SPD was prepared and reissued in full by UHS in or around April of 2003. (#30 ¶ 16 and Exh. C[5]) There are no signed SPD acknowledgment forms

---

[5] It is of interest to note that the SPD states: "Please understand that this handbook highlights the benefit plans and is for your personal education. *You cannot construe it as a legal plan document.*" (#30, Exh. C at 10)(emphasis added).

in Merigan's personnel file, nor are there any written requests for a copy of an SPD. (#30 ¶ 17) Liberty has no knowledge if an SPD was delivered to Merigan. (#30 ¶ 19) UHS is not in possession of any written proof either that SPDs were delivered to its 25,000 employees or that an SPD was mailed to Merigan. (#30 ¶¶ 20, 21)

The plaintiff's last day of work with UHS, due to disability, was November 29, 2003. (#30 ¶ 22; #32 ¶ 5; #40 ¶ 5) The plaintiff sought LTD benefits, which Liberty paid to Merigan pursuant to the Policy for the period between February 18, 2004 and February 18, 2006. (#30 ¶ 23; #32 ¶ 2; #40 ¶ 2) By letter dated March 14, 2006, Liberty notified Merigan that, based on medical and occupational information, he did not qualify for further LTD benefits. (#30 ¶ 24 and Exh. D) Liberty closed Merigan's file as of March 11, 2006. (#30 ¶ 24)

Merigan requested a copy of his claims file shortly after Liberty terminated his benefits in March 2006. (#30 ¶ 25) Liberty delivered the claims file to the plaintiff as requested, including a copy of the Policy. (#30 ¶ 25) By letter dated September 11, 2006, Merigan's attorney contacted Liberty to advise that he would be appealing Liberty's decision to cease paying benefits to the plaintiff, but that the letter was not his appeal. (#30 ¶ 26 and Exh. E) Plaintiff's counsel thereafter sent a letter to Liberty dated February 18, 2009, purporting

7

to constitute Merigan's appeal of Liberty's decision to cease paying him benefits. (#30 ¶ 27 and Exh. F) By letter dated March 23, 2009, Liberty notified Merigan that his February 18, 2009 appeal was untimely and would not be considered because he did not seek review of Liberty's decision to terminate within 180 days of the March 14, 2006 notification. (#30 ¶ 28 and Exh. G)

### *III. Discussion*

The issue presented in Count I of the amended complaint is whether, in not filing his appeal of a March 2006 adverse benefit decision by Liberty until February of 2009, Merigan failed to exhaust his administrative remedies prior to instituting a lawsuit seeking judicial review of that benefits termination decision. Liberty takes the position that Merigan's appeal of the decision to terminate his LTD benefits was untimely, coming as it did nearly two and a half years after the 180-day appeal period set forth in the SPD[6] and the termination letter had expired. (#30, Exh. C, D) Because, in its view, Liberty properly denied the plaintiff's appeal as untimely, the defendant asserts that

---

[6]

Merigan notes that the appeal language in the SPD is permissive rather than precatory, while the language regarding the manner of the appeal, i.e., in writing, is mandatory. *See* #30, Exh. C at 26 ("The claimant...can appeal and request a claim review within 180 days after claimant has received the denial notice. The request must be made in writing and should be filed with the Claims Administrator.") Thus, according to the plaintiff, the plan participants were never notified that they were required to appeal an adverse decision within 180 days or what consequences flowed from the failure to appeal within that time frame.

Merigan failed to exhaust his administrative remedies and, consequently, that his complaint should be dismissed.

Merigan, on the other hand, contends that the 180-day appeal is not incorporated in the Policy[7] which constitutes the LTD Plan and, therefore, is unenforceable. (#30, Exh. A) In the absence of any mandatory deadline in terms of the Policy within which an appeal of a termination of LTD benefits must be filed, Merigan argues that his appeal was timely and that Liberty acted improperly in refusing to consider the merits of his appeal.[8]

The recent Supreme Court decision in *CIGNA Corp. v. Amara*, - U.S. -, 131 S. Ct. 1866 (2011) provides guidance in resolving the issue at hand. CIGNA

---

[7] Liberty does not assert otherwise. *See* #45 at 11 ("The Policy is silent with regard to the appeal time limit.")

[8] The termination letter is more detailed than the SPD with respect to an appeal or review:
> The written request for review must be sent within 180 days of receipt of this letter and state the reasons why you feel your claim should not have been denied. In your request for review, include documentation such as test results, consultations, claim specific information, which you feel, will support your claim. You may request to review pertinent claim file documents upon which the denial of benefits was based. If Liberty Life does not receive your written request for review within 180 days of your receipt of this notice, our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted.

#30, Exh. D at 5.

Merigan asserts that a material term of a plan cannot be informally amended or modified via a letter from a case manager; the procedures detailed in the plan and the ERISA statutory requirements must be met. *See Coffin v. Bowater Inc.*, 501 F.3d 80, 85 (1 Cir., 2007).

converted its traditional defined benefit pension plan to a cash balance pension plan in 1998. *Amara*, 131 S. Ct. at 1870. The change was challenged by the beneficiaries of the pension plan *inter alia* on the ground that they were not given "proper notice of changes to their benefits, particularly because the new plan in certain respects provided them with less generous benefits." *Amara*, 131 S. Ct. at 1870. In advance of the change, CIGNA had issued a newsletter heralding the intention to establish a new pension plan. *Amara*, 131 S. Ct. at 1871. Thereafter the company published a summary of the material modifications to explain the conversion which included detailed information concerning the calculation of the opening balances. *Amara*, 131 S. Ct. at 1871-72.

The District Court determined that "CIGNA's initial descriptions of its new plan were significantly incomplete and misled its employees" and ordered that the terms of the new pension plan be reformed. *Amara*, 131 S. Ct. at 1872, 1875. One of the issues before the Supreme Court was "whether…(ERISA's recovery-of-benefits-due provision, § 502(a)(1)(B)) authorizes entry of the relief the District Court provided." *Amara*, 131 S. Ct. at 1871. The Supreme Court concluded that the relief afforded by the District Court was not available

10

under § 502(a)(1)(B), but "that a different equity-related ERISA provision...authorizes forms of relief similar to those that the court entered. § 502(a)(3), 29 U.S.C. § 1132(a)(3)." *Amara*, 131 S. Ct. at 1871.

Of significance for the case at hand is the Supreme Court's discussion of the Solicitor General's argument that "the 'plan' includes the disclosures that constituted the summary plan descriptions. In other words,...the terms of the summaries are the terms of the plan." *Amara*, 131 S. Ct. at 1877. The Court rejected that contention, holding:

> we cannot agree that the terms of statutorily required plan summaries (or summaries of plan modifications) necessarily may be enforced (under § 502(a)(1)(B)) as the terms of the plan itself. For one thing, it is difficult to square the Solicitor General's reading of the statute with ERISA § 102(a), the provision that obliges plan administrators to furnish summary plan descriptions. The syntax of that provision, requiring that participants and beneficiaries be advised of their rights and obligations 'under the plan,' suggests that the information *about* the plan provided by those disclosures is not itself *part of* the plan. See 29 U.S.C. § 1022(a). Nothing in § 502(a)(1)(B) (or, as far as we can tell, anywhere else) suggests the contrary.
>
> *****
>
> [W]e conclude that the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for

purposes of § 502(a)(1)(B).

*Amara*, 131 S. Ct. at 1877 (emphasis in original).

Admittedly, as Liberty argues, the facts and legal issues involved in the *Amara* case were quite different from those in the case at bar. In the defendant's view, "[t]he Supreme Court's discussion of the relationship between the 'plan' and the plan summaries in *Amara*...should not be broadly construed." (#45 at 8) Liberty cites as support the case of *Ozarks Coca-Cola/Dr Pepper Bottling Co. v. Ritter*, 2011 WL 2491577 (W.D. Mo., June 22, 2011) wherein the court relied on the terms of the SPD when analyzing the claim. However, the court in *Ozarks* distinguished the *Amara* case because, in *Ozarks*, "the SPD was the only document establishing the terms of the plan...[and *Amara*] assumes the existence of both an instrument establishing the terms of the plan and a summary plan description." *Ozarks*, 2011 WL 2491577, at *3 n.1. Thus, *Ozarks* simply does not stand for the proposition that the Supreme Court's holding with respect statements in an SPD not being the terms of a plan should be narrowly construed.

A review of recent cases reveals that courts have not limited the determination that SPDs are not part of the ERISA plan to the facts in *Amara*,

but rather have applied the holding in differing contexts.[9] In the case of *Shoop v. Life Ins. Co. of North America*, 2011 WL 3665030 (E.D. Va., July 19, 2011), *Report and Recommendation adopted*, 2011 WL 3664842 (E.D. Va. Aug. 19, 2011), beneficiaries sought payment under their deceased father's accidental death and dismemberment policy issued by Life Insurance Company of America ("LINA"). LINA had decided that the deceased was not covered and had rejected the claim. *Inter alia*, the parties disagreed as to the proper standard of review. The beneficiaries asserted that a *de novo* standard should be applied because the policy at issue did "not grant LINA discretionary authority to interpret its terms," while LINA argued for "the deferential, abuse of discretion

---

[9]

Many pre-*Amara* cases addressed the situation where a provision of an SPD afforded a benefit that was different from, or in addition to, the terms of the Plan and the plaintiff relied upon it. The current case does not present such a factual scenario. In a pre-*Amara* case that is factually on point to the instant case, the District Court foreshadowed the Supreme Court decision:

> The Plan is the original insurance agreement, and the SPD is supposed to describe the Plan, not supplement it or amend it with new and additional substantive terms....
> *****
> In the case at bar, contrary to [defendant's] assertions, the Plan does *not* afford a reasonable opportunity to appeal an adverse decision. *See* 29 U.S.C. § 1133(2). In fact, the Plan says nothing about how to appeal an adverse decision. Only the SPD discusses the appeal process, and to the extent it implies the appeal process is mandated by the Plan itself, it is incorrect or misleading. The Plan simply contains no administrative appeal process, and the SPD cannot add one where [plaintiff] did not detrimentally rely on it and where she would be harmed by it.

*Spain v. Prudential Ins. Co. of America*, 2010 WL 669866, *6 (S.D. Ill., Feb. 22, 2010)(emphasis in original).

standard of review in accordance with the discretionary review authority described in the SPD." *Shoop*, 2011 WL 3665030, at *5. Resolving the issue, the Court wrote:

> Until May 2011, analyzing terms in the SPD which differed from, or supplemented the Plan documents involved a sometimes complicated factual analysis of the Covered Persons 'reliance' on the conflicting language. *Hendricks v. Central Reserve Life Ins. Co.,* 39 F.3d 507, 511 (4th Cir.1994); *Aiken v. Policy Mgt. Sys. Corp.,* 13 F.3d 138, 141 (4th Cir.1993). The Circuits were sharply split in how they evaluated conflicting SPD terms under ERISA. However, the Supreme Court's recent decision in *CIGNA Corp. v. Amara,* 131 S.Ct. 1866, 1878 (2011), resolved the division, holding that '... the summary documents, [such as the SPD] as important as they are, provide communication with beneficiaries about the plan, but ... their statements do not themselves constitute the *terms* of the plan ...' (emphasis in original).
>
> The parties now agree, under the *Amara* decision, the terms of the Policy control over those of the SPD....Thus, even though the SPD states that LINA has sole discretion to interpret the terms of the Policy, the fact that this language is not included in the Policy itself, means LINA's administrative interpretation of the Policy terms is due no deference.

*Shoop*, 2011 WL 3665030, at *5 (further internal citations omitted).

In like manner, when determining whether a deferential or *de novo*

standard of review should be applied in an ERISA benefits case where it was alleged that Blue Cross had failed to provide reimbursement for certain medical care that had been provided, Judge Caspar noted:

> In support of her argument that Blue Cross cannot rely on the Raytheon SPD to show it has discretionary authority as the claims administrator to determine eligibility of benefits, Bonanno cites the Supreme Court's recent decision in *CIGNA Corp. v. Amara,* —— U.S. ——, 131 S.Ct. 1866, 1878, 179 L.Ed.2d 843 (2011). Bonanno's reliance on *Amara* is misplaced. There, the Supreme Court held that § 502(a)(1)(B) does not grant courts the power to change the terms of a plan, it only allows them to enforce those terms. *Id.* at 1876–77. *It also concluded that plan summaries cannot be enforced under § 502(a)(1)(B) as the terms of the plan itself*, stating that 'summary documents, important as they are, provide communication with beneficiaries about the plan, but [ ] their statements do not themselves constitute the terms of the plan for purposes of § 502(a) (1)(B).' *Id.* at 1877. Here, the Raytheon SPD does not add or alter terms to the benefits provided by the Plan itself and there is no inconsistency between the services covered by the Plan and those that are summarized in the SPD.[10]

*Bonanno v. Blue Cross and Blue Shield of Massachusetts, Inc.*, 2011 WL 4899902, *7 n.4 (D. Mass., Oct. 14, 2011)(emphasis added); *see also Strawn v. Federal Exp. Corp. Long Term Disability Plan,* 2011 WL 3875625, *7 (E.D. Cal., Aug. 31,

---

[10] Of course, in the instant case, the Policy does not set forth a time frame within which an appeal of an adverse decision must filed while the SPD does.

2011)("Defendant contends that because the Summary Plan Description is an LTD Plan document, it is clear evidence that Federal Express as the LTD Plan administrator recognizes and has given authority to the Aetna Review Committee as the appeal committee. Summary plan documents 'provide communication with beneficiaries *about* the plan,' but 'do not themselves constitute the *terms* of the plan....' *CIGNA Corp. v. Amara*, —— U.S. ——, ——, 131 S.Ct. 1866, 1878, 179 L.Ed.2d 843 (2011) (emphasis in original). Although the Summary Plan Description is not a plan document, however, it is evidence that the Aetna Review Committee was appointed as the appeals committee.").

When discussing the plaintiffs' equitable estoppel claim in *Nalbandian v. Lockheed Martin Corporation*, 2011 WL 3881473 (N.D. Cal., Sept. 1, 2011)[11], an ERISA action seeking the payment of survivor benefits under a defined benefits program, the court held that "the terms of the Plan [were] not ambiguous," and, under those terms, the defendants were entitled to summary judgment. *Nalbandian*, 2011 WL 3881473, at *9. The court continued, stating, "Plaintiffs' references to alleged inconsistencies in the Summary Plan Description ("SPD") are unavailing. Under the U.S. Supreme Court's recent decision in *Amara,* the SPD is not part of the Plan." *Nalbandian*, 2011 WL 3881473, *10 (citation omitted); *see also Evans v. Sterling Chemicals, Inc.*, - F.3d -, -, 2011 WL 4837847, *9 (5 Cir., Oct. 13, 2011).

---

[11] An appeal has been filed in *Nalbandian*, USCA Case Number 11-17242 (Ninth Circuit), with the opening brief due 12/19/2011.

16

In a Seventh Circuit case, retirees alleged that CUNA Mutual Insurance Society and its health care plan for retirees violated ERISA when the plan was amended and ceased paying any portion of retirees' health care costs. *Sullivan v. CUNA Mut. Ins. Society*, 649 F.3d 553, 557-558 (7 Cir., 2011). Addressing the plaintiffs' contention that their rights had vested and that numerous documents distributed by CUNA did not provide for a reservation of rights to amend the Plan, the Seventh Circuit wrote:

> *CIGNA Corp. v. Amara*, —— U.S. ——, 131 S.Ct. 1866, 179 L.Ed.2d 843 (2011), holds that silence in a summary plan description about some feature of a pension plan does not override language in the plan itself. The Justices observed that it is essential to a 'summary' plan description that things be left out; a summary plan description covering every feature of a plan would not be a 'summary.' Moreover, the Court held, even if a summary plan description contradicts the full plan, the terms of the full plan continue to govern participants' entitlements. ERISA directs judges to enforce the terms of a plan; it does not authorize judges to change those terms. 29 U.S.C. § 1132(a)(1). See 131 S.Ct. at 1876–80.

*Sullivan*, 649 F.3d at 557-558.

Having found "that every version of the Plan reserved the right to change required contributions or even eliminate healthcare benefits," the court affirmed

17

the judgment for the defendants. *Sullivan*, 649 F.3d at 557, 559.

In this case, the SPD and the LTD Policy are separate documents. Under *Amara*, the terms of the SPD are not the terms of the plan. It is undisputed that the Policy does not incorporate any time limit within which an appeal from a negative decision must be taken. In these circumstances, Liberty acted improperly in refusing to consider Merigan's appeal of the termination of his LTD benefits on the grounds that the appeal was untimely.

In their various pleadings the parties have not focused on Count II of the amended complaint, a claim for attorney's fees and costs under 29 U.S.C. §1132(g), which provides in pertinent part that "[i]n any action under this subchapter...by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." The First Circuit has recently had occasion to write:

> [t]hat section [§501(g)(1)] allows the district court, in its discretion, to award attorneys' fees in an ERISA action, not within the purview of section 502(g)(2), brought by a plan participant, beneficiary, or fiduciary. The Supreme Court recently has clarified the proper mode of analysis with respect to this fee-shifting provision. *See Hardt* [*v. Reliance Standard Life Ins. Co.*], 130 S. Ct. [2149,] 2158 [2010]].
> The *Hardt* Court explained that eligibility for remediation under section 502(g)(1) does not require

> that the fee-seeker be a prevailing party. *Id.* at 2157. The Justices did not necessarily prohibit consideration of the five factors delineated in *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (1st Cir.1996). *See Hardt,* 130 S.Ct. at 2158 n. 8. The Court nevertheless made clear that these factors could not be applied without modification, and that the focal point of the inquiry should be whether a claimant shows 'some degree of success on the merits.' *Id.* at 2158. Achieving this benchmark requires something more than a 'purely procedural victory.' *Id.* The statutory standard is satisfied as long as the merits outcome produces some meaningful benefit for the fee-seeker. *Id.*

*Gastronomical Workers Union Local 610 & Metropolitan Hotel Ass'n Pension Fund v. Dorado Beach Hotel Corp.*, 617 F.3d 54, 66 (1 Cir., 2010).[12]

In light of the Court's decision on Count I of the amended complaint, the merits of Count II must be addressed.

### IV. Conclusion and Order

To summarize, Liberty's decision that Merigan's appeal was untimely was incorrect as a matter of law. As a consequence, the argument that the plaintiff

---

[12] The five *Cottrill* factors are "(1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions." *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (1996), *abrogated to the extent noted in Gastronomical Workers Union Local 610 & Metropolitan Hotel Ass'n Pension Fund v. Dorado Beach Hotel Corp.*, 617 F.3d 54, 66 (1 Cir., 2010).

failed to exhaust his administrative remedies must fail. The Court specifically reserved the question of what the plaintiff's remedy should be if his application was timely. (Electronic Clerk's Notes entered 07/15/2010) The Court shall hear oral argument on this issue and on the question of whether, under the *Hardt* and *Gastronomical Workers* cases, an award of attorney's fees and costs should be made to the plaintiff under 29 U.S.C. § 1332(g)(1). The hearing is set for ***Wednesday, December 7, 2011 at 2:15 P.M.*** Memoranda of law are not required but if either party wishes to file a memorandum of law on these two issues, the memorandum must be filed not less than 24 hours before the hearing.

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

Date: November 30, 2011.